**Danny L. GRIFFIN, Plaintiff-Appellant,**

v.

**OCEANIC CONTRACTORS, INC., Defendant-Appellee.**

No. 80–1599
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.
Unit A

June 17, 1981.
Certiorari Granted Nov. 16, 1981.
See 102 S.Ct. 595.

Friedman & Chaffin, Robert A. Chaffin, Houston, Tex., for plaintiff-appellant.

Fulbright & Jaworski, Theodore Goller, Houston, Tex., for defendant-appellee.

Before BROWN, POLITZ and TATE, Circuit Judges.

TATE, Circuit Judge.

The plaintiff, Danny Griffin, was injured on a vessel while in the employ of the defendant, Oceanic Contractors, Inc. He brought suit against his employer seeking damages under the Jones Act, 46 U.S.C. § 688, the general maritime law of the United States, and for penalty wages under 46 U.S.C. § 596.[1]

After a judge trial on the merits, the trial court found that Griffin's injury was caused by an unseaworthy condition of the vessel, and accordingly awarded him an amount totalling $23,670.40. On appeal, Griffin contends that this award was insufficient

---

1. 46 U.S.C. § 596 provides:

The master or owner of any vessel making coasting voyages shall pay to every seaman his wages within two days after the termination of the agreement under which he was shipped, or at the time such seaman is discharged, whichever first happens; and in case of vessels making foreign voyages, or from a port on the Atlantic to a port on the Pacific, or vice versa, within twenty-four hours after the cargo has been discharged, or within four days after the seaman has been discharged, whichever first happens; and in all cases the seaman shall be entitled to be paid at the time of his discharge on account of wages a sum equal to one-third part of the balance due him. Every master or owner who refuses or neglects to make payment in the manner hereinbefore mentioned without sufficient cause shall pay to the seaman a sum equal to two days' pay for each and every day during which payment is delayed beyond the respective periods, which sum shall be recoverable as wages in any claim made before the court; but this section shall not apply to masters or owners of any vessel the seamen of which are entitled to share in the profits of the cruise or voyage. This section shall not apply to fishing or whaling vessels or yachts.

due to the trial court's error (1) for failure to award him lost wages for his entire contractual term, (2) for failure to include any bonus and/or overtime pay in the computation of earned and/or unearned wages, and (3) for failure to properly apply the penalty wage statute, 46 U.S.C. § 596.

*Facts*

Plaintiff Griffin signed an employment contract on February 18, 1976, with the defendant, Oceanic Contractors, Inc. [hereinafter "Oceanic"], agreeing to work as a senior pipeline welder on defendant's vessels operating in the North Sea. The contract stipulated that his employment would commence "on the date of [his] departure and will continue ... until December 15, 1976 or until Oceanic's 1976 pipeline committal in North Sea is fulfilled whichever shall occur first ...."

Griffin shortly thereafter flew to Antwerp, Belgium, and reported to the vessel, Lay Barge 27, which was tied up in the harbor for winter repairs. On April 1, 1976, in getting the barge ready to put to sea, Griffin developed traumatic thrombosed hemorrhoids when he attempted to move an empty oxygen bottle by himself.

On April 3, 1976, emergency surgery was performed on Griffin at a hospital in Antwerp, where he remained until April 5, 1976. On April 6, 1976, he flew back to his home in Houston, Texas, and was there examined by Dr. Ernest Max, a colon and rectal surgeon, on April 6, 14 and 28, 1976. Griffin reached maximum medical recovery *and* was found fit to return to duty on May 3, 1976.

Griffin brought suit against Oceanic under the Jones Act, general maritime law, and 46 U.S.C. § 596, for its failure to pay maintenance and cure, repatriation expenses, and earned and unearned wages. The trial court found that the vessel was unseaworthy due to an insufficient number of the crew members, and that Griffin's injury resulted from this unseaworthy condition (because he had no aid in moving the oxygen bottle.)

The trial court awarded the damages totalling $23,670.40 to Griffin, as follows: (1) $5,913.68, as recovery for maintenance and cure, earned and unearned wages, repatriation expense and the value of lost personal effects; (2) $2,506.89, as prejudgment interest on the recovery for maintenance and cure, earned and unearned wages, repatriation expense, and the value of lost personal effects; (3) $3,368.23, as attorney's fees for the recovery for maintenance and cure, earned and unearned wages, repatriation expense and prejudgment interest; (4) $5,000.00, as recovery for pain and suffering and penalty wages; and (5) $6,881.60 as penalty wages.

Griffin's appeal questions only the refusal of the trial court to allow him full wages (straight time, overtime, and bonuses) for the entire period of his contractual employment (the trial court limited the wage-recovery to the period of disability), and its failure to award him the full statutory penalty, 46 U.S.C. § 596 (quoted at note 1), of double-daily wages for each day until the time of actual payment in 1980 of the unpaid wages earned in 1976 (the trial court awarded him double the daily rate of straight time wages for the 34-day period of unemployment during 1976, or a total of $6,881.60).

## I

The trial court allowed Griffin to recover unearned wages from the day after his injury, April 2, to the date he was found fit for duty by Dr. Max, May 3, 1976. On appeal, Griffin urges that the trial court committed an error of law in not awarding him unearned wages until the ending date of his contractual period of employment, which in this instance was September 15, 1976, the date on which Oceanic's pipelaying season was completed in the North Sea.

Griffin advances three separate theories upon which he should recover unearned wages from April 1 to September 15: (1) under the general maritime law (as part of his claim for maintenance, wages, and cure); (2) as general damages under the Jones Act; and (3) under a breach of contract theory.

We find all three to be inapplicable to the facts before us.

■ The right of an injured seaman to recover unearned maintenance-wages-cure (M–W–C) wages under the general maritime law of the United States until either (1) the end of the voyage or (2) the end of the contractual period of employment is well established. *See, e. g., The Osceola,* 189 U.S. 158, 175, 23 S.Ct. 483, 487, 47 L.Ed. 760 (1903); *Isthmian Lines v. Haire,* 334 F.2d 521 (5th Cir. 1964); *Vickers v. Tumey,* 290 F.2d 426, 434 (5th Cir. 1961); *Rofer v. Head & Head, Inc.,* 226 F.2d 927, 929 (5th Cir. 1955); 2 M. Norris, The Law of Seamen 17 § 544, p. 17 (3d ed. 1970). However, if the seaman recovers from the injury and is fit to return to duty prior to the termination of the voyage or his contractual period, then he is not entitled to continue to receive M–W–C wages past that point.[2] *See Vickers v. Tumey, supra,* 290 F.2d at 434–435; *Martinez v. Star Fish and Oyster Co.,* 386 F.Supp. 560, 564 (S.D.Ala.1974); *Warren v. United States,* 75 F.Supp. 836, 838 (D.C. Mass.1948).

■ As Griffin contends, lost wages may also form an element of damages in a suit brought under the Jones Act. *See Vickers v. Tumey, supra,* 290 F.2d at 434. Nevertheless, even under the Jones Act (under which a plaintiff may recover for loss of future earnings after the termination of voyage or contract), Griffin is not allowed to recover for lost wages past May 3, 1976, because he was found to have fully recovered as of that date and was found to have incurred no diminution of future earnings as a result of his injury. Any decrease in earnings after May 3 was due to Griffin's failure to return to work for Oceanic, not from his injury, since Oceanic (see below) held his position open for him.

■ Finally, Griffin contends he is due unearned wages through September 15, 1976, because the defendant breached his employment contract by wrongfully discharging the defendant on April 1, 1976. The trial court did indeed find that Griffin was discharged effective April 1, but it failed to state that such a discharge constituted a breach of contract. Although notice was sent to Griffin that his discharge was effective April 1, such notification was not transmitted until June 2 (after unsuccessful efforts to contact Griffin and discover when he would return to work) (Def. Ex. 11, 12, Tr. 364–67), and the evidence in the record establishes that Griffin's job was held open until at least June 1, 1976 (Def. Ex. 12), that he made no effort to return to work for Oceanic (indeed, he obtained new employment on May 5), and that Oceanic made numerous attempts to contact Griffin for the purpose of re-employment.[3]

## II

The plaintiff also contends that the trial court erred in not awarding him (1) bonus pay for the period prior to his injury and (2) bonus and overtime pay for the period between April 2 and May 3.

■ We disagree. Griffin's contract provided for (1) an annual bonus and (2) a contract-completion bonus. The trial court found that "the terms of the contract provide that such bonuses are not payable unless the employment term is completed by the employee." Since the employment term was not completed, we do not find that the trial court was clearly erroneous in not including a proportionate amount of these bonuses in computing Griffin's unearned

2. In *Warren v. United States,* 75 F.Supp. 836, 838 (D.C.Mass.1948), the court found that a seaman was entitled to M–W–C wages "until the time the seaman is not only well but able to find suitable employment." For purposes of the present case, we pretermit discussion of whether a seaman has to be both fit for duty *and* able to find suitable employment in order for M–W–C wages to be terminated, for here the trial court found as a fact that Griffin had accepted new employment on May 5, 1976, just two days after he was pronounced fit for duty.

3. The district court did not make an express finding as to the nonbreach of contract, but under the virtually uncontradicted evidence, any finding of breach would have been clearly erroneous, so the issue may be reviewed by us without remand. See *Kratzer v. Capital Marine Supply, Inc.,* 645 F.2d 477, 483 (5th Cir. 1981).

wages, either on a contract theory or as Jones Act wage damages.

■ Furthermore, the district court did not include any overtime pay for the period between April 2 and May 3. Again, we cannot say that the district court erred. The actual amount of overtime was uncertain, and hence any inclusion of such would have been purely speculative. *See Martinez v. Star Fish and Oyster Co.*, 386 F.Supp. at 564; *Keefe v. American Pacific Steamship Co.*, 110 F.Supp. 853, 856 (S.D.Cal.1953).

### III

The district court found that Oceanic's failure to promptly pay $412.50 withheld from wages already earned by Griffin constituted a withholding of wages without sufficient cause. Under 46 U.S.C. § 596, Griffin was entitled to recover a penalty for this wrongful withholding. The statutory penalty requires payment of a penalty of (twice the daily wage rate for each) to the seaman until he is actually paid (see note 1 for statutory text), which in his case was not until September, 1980, after the judgment below. The trial court computed this penalty, however, by doubling Griffin's daily straight-time wage only for the period from April 1, 1976 to May 5, 1976, the date of his re-employment.

Griffin contends that the trial court erred in so applying the wage penalty only from April 1 through May 5, 1976, arguing that it should have been awarded for each day during which the failure to pay continued, a period not ending until September, 1980.

■ In this circuit, the duration on applying the wage penalty statute (46 U.S.C. § 596) is left to the sound discretion of the district court. *Caribbean Federation Lines v. Dahl*, 315 F.2d 370, 374 (5th Cir.), cert. den., 375 U.S. 831 (1963). *Ventiadis v. C. J. Thibodeaux & Co.*, 295 F.Supp. 135, 138 (D.C.Tex.1968).[4] Absent any abuse, we do not disturb the trial court's order.

■ Here, after considering the equities involved, the trial court granted Griffin penalty wages only for the period during which he was actually not employed. We are unable to state that the district court abused its discretion by so doing.

### Conclusion

In summation, we find that the trial court neither abused its discretion nor committed any error of law in the computation of the damage award granted to plaintiff Griffin. We, therefore, AFFIRM the decision of the trial court.

AFFIRMED.

---

4. The plaintiff Griffin accurately states that other circuits view § 596 as establishing a mandatory time period for its application. However, the Supreme Court in *American Foreign S. S. Co. v. Matise*, 423 U.S. 150, 152 n.1, 96 S.Ct. 410, 412 n.1, 46 L.Ed.2d 354 (1975) recently noted this circumstance and also that the Fifth Circuit view as to the discretionary time period application is shared by a majority of circuits that have considered the issue:

    While the Third and Ninth Circuits have found that the trial judge has no discretion in determining the amount of the penalty under § 596, *Swain v. Isthmian Lines, Inc.*, 360 F.2d 81 (CA3 1966); *Escobar v. S. S. Washington Trader*, 503 F.2d 271 (CA9 1974), cert. pending sub nom. *American Trading Transp. Co. v. Escobar*, No. 74–1184, the First, Second, Fourth, and Fifth Circuits have concluded that the length of time to which the penalty applies—and hence its amount—is subject to the discretion of the District Court. *Mavromatis v. United Greek Shipowners Corp.*, 179 F.2d 310 (CA1 1950); *Forster v. Oro Navigation Co.*, 228 F.2d 319 (CA2 1955), aff'g 128 F.Supp. 113 (S.D.N.Y.1954); *Southern Cross S. S. Co. v. Firipis*, 285 F.2d 651 (CA4 1960), cert. denied, 365 U.S. 869, 81 S.Ct. 903, 5 L.Ed.2d 859 (1961); *Caribbean Federation Lines v. Dahl*, 315 F.2d 370 (CA5 1963). Under the precedential rule of this circuit, until it is overruled by en banc opinion, this panel is bound by prior circuit precedent.